## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MIKE COAN, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT FOR DEFAMATION** |
| LAKESIDE COMMUNICATIONS, LLC | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Mike Coan, by and through his undersigned counsel, states his Complaint for Defamation ("Complaint") against Defendant Lakeside Communications, LLC ("Lakeside Communications"), as follows:

## **INTRODUCTION**

1.      This is an action for defamation arising from Defendant Lakeside Communications' publication of a campaign commercial—published nearly 400 times on Fox News—on the eve of Georgia's Republican primary election for Labor Commissioner.  That commercial falsely and maliciously accused Plaintiff Mike Coan of being responsible for a criminal human trafficking conspiracy at the Georgia Department of Labor.

1

2.     Lakeside Communications is a political consulting firm that represented current Georgia Senator Bruce Thompson in that primary election for Labor Commissioner. According to its website, Lakeside Communications "share[s] your story using creative storytelling and bold visuals designed to persuade voters and win races" and has "produced winning ads for candidates for President, U.S. Senator, Governor, statewide office & dozens of members of Congress."[1]

3.     Lakeside Communications is not shy about its method and purpose—to raise voter awareness of its candidate while denigrating the trust a voter may have in the opposition through the use of paid advertising, because it is "the most efficient way of intrusively communicating a message to the greatest number of people in the shortest period of time" and, as is palpably applicable here, "a picture is worth a thousand words."

4.     In this instance, Lakeside Communications published a campaign commercial containing the following still frame while a voiceover states "[t]his career politician and bureaucrat who screwed up the Department of Labor wants to be our next Labor Commissioner":

---

[1]  *See About Lakeside,* https://web.archive.org/web/20220727161138/https://lakeside-communications.com/.

2



5.      Stressed by the voiceover, Coan's photograph and name, and yellow highlighting, Lakeside Communications conveyed, and intended to convey, the false and defamatory accusation that Coan was implicated by law enforcement in a human trafficking conspiracy.

6.      The language quoted and attributed to USA TODAY is, indeed, a headline from a USA TODAY article published on April 19, 2022. A true and correct copy of that USA TODAY article is attached hereto as *Exhibit A* and incorporated herein by reference.[2]

---

[2] *See also* https://www.usatoday.com/in-depth/news/investigations/2022/04/19/georgia-trafficking-farmworker-forced-labor-probe-government-ties/9490474002/ (last visited July 26, 2022).

7.    The USA TODAY article does not mention Coan at all; nor would it, because he had absolutely nothing to do with the alleged massive criminal conspiracy to traffic human beings into forced labor on Georgia farms described in that article.

8.    Indeed—as Lakeside Communications knew prior to publication of the false and defamatory campaign commercial—Coan did not join the Georgia Department of Labor in any capacity until **December 2021** when he was appointed its Deputy Commissioner.  The alleged criminal conspiracy concerns allegations occurring "**in or before 2015**," and The United States Attorney's Office for the Southern District of Georgia announced the unsealing of an indictment of "24 defendants for human trafficking" on **November 22, 2021**, both dates before Coan ever arrived at the Department of Labor.  A true and correct copy of a press release issued by The United States Attorney's Office for the Southern District of Georgia is attached hereto as *Exhibit B* and incorporated herein by reference.[3]

9.    This accusation is not mere political hyperbole.   Lakeside Communications fabricated an accusation against Coan that an investigation by law enforcement had tied him to human trafficking in his role as a government official.

---

[3] *See also* https://www.justice.gov/usao-sdga/pr/human-smuggling-forced-labor-among-allegations-south-georgia-federal-indictment (last visited July 26, 2022).

It did so by consciously manipulating its only apparent source—USA TODAY—to say something that it simply did not say: Mike Coan was involved in or otherwise responsible for a human trafficking conspiracy at the Department of Labor.

10.    The unstated details of this alleged criminal conspiracy are despicable. Twenty-four individuals—one of whom is a former Department of Labor employee—are alleged to have engaged in a "human smuggling and trafficking operation that illegally imported Mexican and Central American workers into brutal conditions on South Georgia farms," subjecting the victims to "modern-day slavery," "imprisoned under inhumane conditions" that included rape, kidnapping, attempted murder, and causing the death of at least two workers.[4]

11.    Given Lakeside Communications' and Bruce Thompson's conscious defamation of Coan, it is not altogether surprising that Senator Thompson defeated Coan in the primary election for Georgia's Labor Commissioner.

12.    Accordingly, this is an action for defamation per se against Lakeside Communications for its publication of a campaign commercial for Bruce Thompson falsely accusing Coan of being tied to or otherwise involved in human trafficking.

**PARTIES, JURISDICTION, AND VENUE**

13.    Plaintiff Coan is a citizen of Georgia who resides in Gwinnett County.

---

[4] *See id.*

14.    Defendant Lakeside Communications, LLC is an Ohio limited liability company and citizen of Ohio, and it may be served with summons and process via its duly appointed registered agent, Robert A. Kish, Jr., at 90 Halligan Ave., Worthington, Ohio 43085.

15.    There exists complete diversity of citizenship between Coan and Defendant Lakeside Communications.

16.    The amount in controversy significantly exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

17.    Therefore, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

18.    Defendant Lakeside Communications established significant Georgia contacts in the course of its consulting for Georgia Senator Bruce Thompson, each of which are directly related to the defamation at issue in this case and were formed as part of its purpose to influence a state-wide Georgia election.

19.    Defendant Lakeside Communications represented a Georgia Senator in a state-wide election for Labor Commissioner.

20.    Defendant Lakeside Communications, on behalf of Senator Bruce Thompson, contracted with multiple companies—both domestic and foreign companies, all of which transact business in Georgia—to air approximately 371

campaign advertisements on Fox News in Georgia markets, for the purpose of influencing a state-wide election.

21.    For instance, according to the FCC's public inspection file, Defendant Lakeside Communications contracted with Georgia entities and companies doing business in Georgia, as follows:

> a.  Comcast of Georgia I, LLC, a Georgia limited liability company, to air 78 commercials on Fox News in the Savannah, Georgia and Hinesville, Georgia markets (*see Exhibit C-1*);[5]
>
> b.  Comcast of Georgia I, LLC, to air 94 commercials on Fox News in the Atlanta, Georgia and Madison, Georgia markets (*see Exhibit C-2*);[6]
>
> c.  Comcast of Greater Florida/Georgia, Inc., a Florida corporation previously authorized to transact business in Georgia, to air 116 commercials in the Brunswick, Georgia and North Florida markets (which cover portions of South Georgia) (*see Exhibit C-3*); and

---

[5] Such an agreement also exists with Comcast of Georgia/South Carolina, LLC, a Colorado limited liability company authorized to transact business in Georgia.
[6] Such an agreement also exists with Comcast of Georgia/Michigan, LLC, a California limited liability company authorized to transact business in Georgia.

      d.  Comcast of Greater Florida/Georgia, Inc. to air 83 commercials in the Valdosta, Georgia and Tallahassee, Florida markets (which cover portions of South Georgia) (*see Exhibit C-4*).

A true and correct copy of the agreements and order forms available on the FCC's public inspection file for each of the above is attached hereto as composite *Exhibit C* and incorporated herein by reference.

22.    Defendant Lakeside Communications' defamation of Coan was directed specifically toward the State of Georgia, including toward Coan by knowingly targeting a Georgia citizen and toward its voters at-large for the purpose of affecting the outcome of a state-wide Georgia election.

23.    Sufficient contacts exist with respect to Defendant Lakeside Communications, its business, and the claims at issue in this case to satisfy the requirements of due process.

24.    Accordingly, this Court has personal jurisdiction over Defendant Lakeside Communications pursuant to O.C.G.A. § 9-10-91 because, *inter alia*, Lakeside Communications has significant contacts within the State of Georgia to anticipate being haled into court in the State of Georgia, transacts significant business within the State of Georgia—those contacts being directly related to the

defamation at issue in this case—and otherwise has engaged in a persistent course of conduct aimed at the State of Georgia.

25.     A substantial part of the events giving rise to this claim occurred in this District.  Specifically, and without limitation, the defamation was published in the Atlanta, Georgia markets and Plaintiff Coan's injuries were suffered in this District, including at his place of residence in Gwinnett County, Georgia, also in this District.

26.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2)-(3), 1391(c)(2), and 1391(d).

## FACTUAL BACKGROUND

### Plaintiff Coan Arrives at the Department of Labor in December 2021

27.     As is a matter of public record, Plaintiff Coan did not hold any position within the Department of Labor until December 2021.

28.     As is a matter of public record, the alleged human trafficking conspiracy involving the Department of Labor and subject of Defendant Lakeside Communications' false accusations is alleged to have occurred in or before 2015.

29.     As is a matter of public record, in November 2021, the United States Attorney's Office for the Southern District of Georgia—which is prosecuting the alleged human trafficking conspiracy involving the Department of Labor—

announced a previously sealed indictment of the 24 individuals allegedly involved in the conspiracy and identified them by name.

30.    Between 1996 and 2010, Plaintiff Coan served in the Georgia House of Representatives.

31.    Between 2010 and 2020, Plaintiff Coan led Georgia's Subsequent Injury Trust Fund, having been appointed by Governor Purdue, Governor Deal, and Governor Kemp.

32.    Beginning December 2021, Plaintiff Coan served as the Deputy Commissioner of the Department of Labor.

33.    In March 2022, Plaintiff Coan left his position as Deputy Commissioner of the Department of Labor for the purpose of entering the election for Labor Commissioner, and re-joined the Department in the same position in June 2022.

### Lakeside Communications Accuses Plaintiff Coan of Being Involved in Human Trafficking

34.    Georgia's primary election for Labor Commissioner occurred on May 24, 2022.

35.    On April 19, 2022, USA TODAY published an article headlined "'Beyond troubling': Current, former government officials tied to human trafficking probe in Georgia," recounting details of the alleged human trafficking conspiracy

and its purported connections to two Georgia Department of Labor employees. *See Exhibit A.*

36.    According to the USA TODAY article, an indictment for the alleged conspiracy was returned in October 2021, and the announcement of the indictment was made in November 2021. *See id.*

37.    Thirteen days after USA TODAY published its article, Lakeside Communications purchased 371 slots for the defamatory commercial (the "Defamatory Commercial") to air on Fox News in its Georgia markets, running from May 2, 2022, to May 22, 2022.

38.    The Court may view the Defamatory Commercial published by Lakeside Communications on Bruce Thompson's campaign committee's YouTube channel at https://www.youtube.com/watch?v=3PyfzgfEga4 (last visited July 26, 2022) and

https://www.dropbox.com/s/mz883xeyyxfniwg/Bruce%20Thompson%20For%20Georgians_YouTube%20Campaign%20Commercial.MP4?dl=0, each of which are incorporated herein by reference.

39.    The Defamatory Commercial begins with a voiceover stating: "This career politician and bureaucrat who screwed up the Department of Labor wants to be our next Labor Commissioner.  A better choice, Bruce Thompson."

40.    While the voiceover is heard, the Defamatory Commercial shows Plaintiff Coan's face and name, including as set forth below:



41.    Upon information and belief—including Defendant Lakeside Communications' website, the FCC public inspection files referenced herein, and Defendant's failure to rebut Coan's assertion via letter that it produced the

Defamatory Commercial—Defendant Lakeside Communications was involved in the creation and production of the Defamatory Commercial.

42.    Additionally, as set forth above, Lakeside Communications purchased 371 slots for the Defamatory Commercial to air on Fox News between May 2, 2022, and May 22, 2022.  *See Exhibit C*.

43.    Lakeside Communications published the Defamatory Commercial and/or caused it to be published to third parties without privilege, including, without limitation, Comcast d/b/a Effectv.

44.    Lakeside Communications published the Defamatory Commercial to third parties, including Comcast d/b/a Effectv, with the express intention that it would be republished on Fox News.

**Demand for Retraction**

45.    On June 29, 2022, Plaintiff Coan delivered to Defendant Lakeside Communications a demand for retraction of the false accusations in the Defamatory Commercial.  A true and correct copy of same is attached hereto as *Exhibit D* and incorporated herein by reference.

46.    The retraction demand was delivered via FedEx to Lakeside Communications and via e-mail to its Lead Media Buyer & Strategist, Robert Clegg, whose signature is listed on each of the agreements with Comcast.

13

47.    Although a read receipt of the retraction demand thread was received from Mr. Clegg, neither he nor Defendant Lakeside Communications issued any kind of retraction or correction of the false accusations in the Defamatory Commercial, nor did they respond to the retraction demand or a follow-up e-mail.

## CAUSE OF ACTION FOR DEFAMATION

48.    Plaintiff Coan incorporates by reference paragraphs 1 through 47 of this Complaint as though set forth in their entirety.

49.    Defendant Lakeside Communications published the Defamatory Commercial to cable operator Comcast d/b/a Effectv.

50.    In its complete context, the Defamatory Commercial conveyed the false and defamatory meaning that Plaintiff Coan was responsible for and/or otherwise tied to a criminal human trafficking conspiracy in the context of his career (the "False and Defamatory Accusation").

51.    The False and Defamatory Accusation is unequivocally false.  Plaintiff Coan had absolutely no involvement—personal, professional, or otherwise—in any conspiracy to traffic human beings for any purpose.

52.    The False and Defamatory Accusation is defamatory per se, in that it accuses Plaintiff Coan of criminal conduct and otherwise disparages him in his profession, and damages are therefore presumed as a matter of law.

53.     The False and Defamatory Accusation is of and concerning Plaintiff Coan, including because his name and photograph was shown while the Defamatory Commercial stated "[t]his career politician and bureaucrat".

54.     Defendant Lakeside Communications published the False and Defamatory Accusation without privilege.

55.     Defendant Lakeside Communications published the False and Defamatory Accusation negligently and with actual malice, in that it (and its employees) knew or recklessly disregarded that Plaintiff Coan had no involvement of any kind in any conspiracy to traffic human beings.

56.     Defendant Lakeside Communications published the False and Defamatory Accusation negligently and with actual malice, in that it (and its employees) knew or recklessly disregarded that the alleged conspiracy to traffic human beings occurred prior to Plaintiff Coan having any position of any kind within the Department of Labor.

57.     Defendant Lakeside Communications published the False and Defamatory Accusation negligently and with actual malice, in that it (and its employees) knew or recklessly disregarded that the indictment for the alleged conspiracy to traffic human beings was returned prior to Plaintiff Coan having any position of any kind within the Department of Labor.

58.     Defendant Lakeside Communications published the False and Defamatory Accusation negligently and with actual malice, in that it (and its employees) knew or recklessly disregarded that its sole apparent source—the USA TODAY article—did not mention Plaintiff Coan, and the article otherwise indicated that the alleged conspiracy occurred prior to Plaintiff Coan's employment at the Department of Labor.

59.     Defendant Lakeside Communications published the False and Defamatory Accusation negligently and with actual malice, in that it literally made it up out of whole cloth without any evidence or information to support it.

60.     In addition to presumed damages, the False and Defamatory Accusation caused Plaintiff Coan significant actual reputational and emotional suffering.

61.     Defendant Lakeside Communications knew, intended, and foresaw that its Defamatory Commercial and False and Defamatory Accusation would be widely republished to a significant audience in Georgia by Comcast and/or Fox News.

62.     Accordingly, Defendant Lakeside Communications is liable for all damages suffered by Plaintiff Coan as a result of such intended and/or foreseeable republication of the False and Defamatory Accusation.

16

63.     Despite being confronted with the falsity of its accusations, Defendant Lakeside Communications has taken no action whatsoever to correct or clarify its False and Defamatory Accusation.

64.     Defendant Lakeside Communications' False and Defamatory Accusation was specifically designed and intended to cause knowing harm to Plaintiff Coan, in an effort to assist its client—Bruce Thompson—in winning an election for Labor Commissioner.

65.     As a result of Defendant Lakeside Communications' malice and intent to harm, Plaintiff Coan is entitled to an award of punitive damages to punish Defendant for its unlawful conduct and to deter it from repeating such misconduct in the future, including in this State's and country's political races.

66.     Defendant Lakeside Communications' actions were further taken in bad faith, and it has otherwise been stubbornly litigious, and Plaintiff Coan is therefore entitled to an award of his reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Mike Coan respectfully petitions this Honorable Court for the following relief:

a)  That Summons and Process issue as provided by law;

b)  That Coan be granted a trial before a jury of his peers;

c) That Coan be granted judgment and all appropriate damages against

   Defendant Lakeside Communications for its false and defamatory per se

   accusations; and

d) For such other and further relief as the Court may deem just and proper.

   Respectfully submitted this 1st day of August, 2022.

**WADE, GRUNBERG & WILSON, LLC**

/s/ G. Taylor Wilson
Nicole Jennings Wade
Georgia Bar No. 390922
nwade@wgwlawfirm.com
Jonathan D. Grunberg
Georgia Bar No. 869318
jgrunberg@wgwlawfirm.com
G. Taylor Wilson
GA Bar No. 460781
twilson@wgwlawfirm.com

600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
404-600-1153
404-969-4333 (fax)

*Counsel for Plaintiff Mike Coan*

18

## <u>CERTIFICATION UNDER L.R. 7.1D.</u>

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the undersigned counsel certifies that this COMPLAINT FOR DEFAMATION is a computer document and was prepared in Times New Roman 14 point font, as mandated in Local Rule 5.1C.

This 1st day of August, 2022.

<u>/s/ G. Taylor Wilson</u>
G. Taylor Wilson

i